**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Leonardo Tapia, Jr, | ) No. CV 12-02393-FJM-MHB |
| Petitioner, | ) **REPORT AND RECOMMENDATION** |
| vs. | ) |
| C. DeRosa, | ) |
| Respondent. | ) |

TO THE HONORABLE FREDERICK J. MARTONE, UNITED STATES SENIOR DISTRICT JUDGE:

Petitioner Leonardo Tapia, Jr. (A027-530-663) has filed a *pro se* Petition for Writ of Habeas Corpus (hereinafter "habeas petition") pursuant to 28 U.S.C. § 2241 (Doc. 1). On June 24, 2013, Respondent[1] filed his Response in Opposition, along with separately filed additional exhibits (Doc. 14, 15, and 16). Although Petitioner did not file a Reply, he filed a "Lodgement of Exhibits" in support of his habeas petition on September 16, 2013 (Doc. 17).

**BACKGROUND**

Petitioner, an inmate incarcerated at the Eloy Detention Center in Eloy, Arizona, claims in his habeas petition that he is being unlawfully detained by Immigration and

---

[1] Petitioner incorrectly names C. DeRosa as Respondent. The proper respondent is Katrina Kane, as she is the warden of the facility where Petitioner is held. See 28 U.S.C. §§2242, 2243 (writ shall be directed to person having custody of detainee).

1  Customs Enforcement because he is a United States Citizen, and demands his immediate
2  release. (Doc. 1, at 4, 9.) Petitioner admits he did not exhaust his administrative remedies,
3  because he claims that there is "[n]o remedy" for Petitioner. (Id., at 4.) Respondent argues
4  that Petitioner's habeas petition should be denied because Petitioner has not exhausted his
5  administrative remedies, and, alternatively, that it be denied on the merits. (Doc. 14.)

6  On April 28, 1987, immigration officials arrested Petitioner, a juvenile, for entry
7  without inspection, and was issued alien number 027 530 663. (Doc. 14-2, at 23.) During
8  that time, the Immigration and Naturalization Service processed unaccompanied juvenile
9  aliens by serving them with an alien registration number prior to returning them to their
10 country. (Id., at 24.) On June 4, 1998, Petitioner was convicted in the Superior Court of
11 Arizona of one count of Possession of Dangerous Drugs, a class four felony, and one count
12 of Possession of Drug Paraphernalia, a class six felony. (Id., at 27-32.) Petitioner was
13 sentenced to three years of probation on the dangerous drugs count, and six months in prison
14 on the drug paraphernalia count. (Id.)

15 On August 21, 1998,  Petitioner was encountered by immigration officials while
16 Petitioner was incarcerated at the Florence, Arizona detention facility, and determined to be
17 a citizen of Mexico with alien number 027 530 663. (Doc. 14-2, at 24.) On June 22, 1999,
18 Petitioner was convicted in the Superior Court of Arizona of the crime of Possession of
19 Narcotic Drugs for Sale with One Prior Felony Conviction, a class two felony, and sentenced
20 to 10-years in prison. (Id., at 34-37.)

21 On April 17, 2008, Petitioner applied for entry into the United States in San Luis,
22 Arizona, at the San Luis port-of-entry. (Doc. 14-2, at 24.) Petitioner stated to Customs and
23 Border Patrol Protection Officer Ramirez that he was looking for his girlfriend. (Id.) The
24 girlfriend had already been admitted by ambulance approximately 30 minutes earlier. (Id.)
25 During his encounter with immigration officials, it was determined that Petitioner had two
26 prior arrests for Entry Without Inspection ("EWI"), in violation of 8 U.S.C. §1325. (Id., at

24-25.) Based upon conflicting information[2] however, Border Patrol agents listed Petitioner's citizenship as "unknown." (Id.) Petitioner was ultimately turned over to San Luis police for further questioning. (Id.)

In July, 2009, the Government performed a routine record check and discovered Petitioner's previous EWI arrests. (Doc. 14, at 3 ¶7.) On July 10, 2009, Immigration and Customs Enforcement (ICE) placed an immigration detainer/hold on Petitioner while he was incarcerated by the Arizona Department of Corrections. (Doc 14-2, at 11, 21.) Petitioner was convicted, on August 13, 2009, in the Arizona state court of the crime of kidnaping, a class 2 felony, in violation of A.R.S. §13-1304(A)(3), and sentenced to five-years in prison. (Id., at 40-43.) On August 24, 2009, immigration officials encountered Petitioner where he was incarcerated. (Id., at 14.) Petitioner claimed to be a United States citizen and provided copies of a California "Delayed Registration at Birth" (hereinafter "Delayed Registration"), a United States passport issued May 16, 2007, a Social Security card, and an Arizona Driver's License. (Id.) Based upon these documents, immigration officers deemed Petitioner to be a United States citizen. (Id.)

The Delayed Registration indicated that Petitioner was born in Santa Ana, California, on June 16, 1972, and identifies his mother as Rosa Maria Felix and his father as Leonardo Tapia. (Doc. 14-2, at 12.) The document indicates that Petitioner's mother signed it on September 10, 1990, and his father on September 6, 1990. (Doc. 14-2, at 45.) The typed notes on the Delayed Registration indicate that the registrar relied on a baptismal certificate from Our Lady Queen of Angels Church in Los Angeles, California to determine that Petitioner was born on June 16, 1972, in Santa Ana, California. (Id.)

In November, 2009, the Government obtained Petitioner's certified birth certificate from San Luis Rio Colorado, Sonora, Mexico, bearing the name "Leonardo Tapia Feliz"

---

[2] It was determined that Petitioner had utilized a United States Passport as proof of citizenship to enter the United States on at least 7 occasions in 2007 and 2008. (Doc. 14-2, at 25.)

- 3 -

1   with a date of birth of June 16, 1072.  (Doc. 14-2, at 3.)  The certificate lists his mother's
2   name as "Rosa Maria Felix" and his father's name as "Leonardo Tapia-Ambriz." (Id.)  Both
3   parents signed the certificate, and two witnesses to their signing also signed the certificate.
4   (Id.)  The birth certificate was recorded and registered in San Luis Rio Colorado, Sonora,
5   Mexico, on July 24, 1972, approximately five weeks after Petitioner's birth.  (Id.) The
6   Government also obtained a Mexican National Registration Card, issued on September 10,
7   2000, bearing the name Leonardo Tapia-Felix.  (Doc. 14-2, at 12.)  The card lists Tapia-
8   Ambriz's date of birth as June 16, 1972, and reflects that he was born in San Luis Rio
9   Colorado, Sonora, Mexico.  (Id.)

10   On January 13, 2011, immigration officials interviewed Petitioner's mother at her
11   residence and obtained a three-page sworn statement written in the Spanish language. (Doc.
12   14-2, at 48-59.)  Petitioner's mother stated that her son, Petitioner, was born in San Luis Rio
13   Colorado, Sonora, Mexico on June 16, 1972, and that the Mexican birth certificate was her
14   son's birth certificate, and that she had signed it.  (Id.) She also stated that Petitioner's father
15   had taken her and Petitioner to the United States when Petitioner was 40 days old.  (Id.)  She
16   admitted that she had told Petitioner when he was fifteen years old that he was born in
17   Mexico and not a United States citizen.  (Id.)  She also admitted that she had signed the
18   Delayed Registration at an attorney's office in Santa Ana, California at the request of
19   Petitioner's father.  (Id.)

20   On February 15, 2012, the United States Department of State ("DOS") sent a letter
21   to Petitioner revoking his United States passport, informing Petitioner that the discovery of
22   his the timely-filed Mexican birth certificate coupled with his mother's statement regarding
23   his place of birth, warranted revocation of his passport, and instructing Petitioner to surrender
24   his passport to he DOS.  (Doc. 14-2, at 61.)  On July 31, 2012, Petitioner was apprehended
25   by immigration officials at the Arizona Department of Corrections and placed in removal
26   proceedings by the filing of a Notice to Appear ("NTA") charging him with being present
27   in the United States without being admitted or paroled by an immigration officer, in violation
28   of 212(a)(6)(A)(i) of the Immigration and Nationality Act ("INA").  (Id., at 17, 64.)

1  Petitioner was ordered detained by the Department of Homeland Security Official. (Doc. 14-
2  3, at 16.)  On August 3, 2013, Petitioner, through counsel, submitted the following
3  documents in support of his claim of United States citizenship in bond redetermination and
4  removal proceedings; a copy of his Delayed Registration, a copy of his passport, a copy of
5  his Social Security card; and a Baptismal Certificate. (Doc. 14-2, at 67-77; 14-3, at 1-12.)

6        A hearing commenced before the Immigration Judge ("IJ") on Petitioner's claim of
7  United States citizenship on September 21[3], and continued on October 12, 2012.  On
8  November 30, 2012, the IJ rendered her 21-page (single spaced) written decision. (Doc. 14-
9  3, at 18-38.)  The IJ considered, in rendering her decision, the testimony of Petitioner's
10  mother Rosa Marie Felix, and Homeland Security investigators Special Agents ("SA") Brian
11  Wakefield and Michael Quirk. (Id., at 19.)  The IJ also admitted and considered, in pertinent
12  part, the following documents: (1) Petitioner's Exhibit 2, attachments A-D, which consisted
13  of the Delayed Registration of Petitioner's birth in California, a copy of Petitioner's passport,
14  a copy of Petitioner's Social Security card, a delayed baptismal certificate, a document from
15  the Sonoran Office of Vital Statistics, a letter from Adelina Tapia, and a transcript of the
16  testimony of Veronica Cruz (Doc. 14-3, at 35); (2) the following attachments to
17  Government's Exhibit 6, (a) Petitioner's Mexican birth certificate, (b)  SA Wakefield's
18  investigative report, (c) 2009 authenticated I-213 form, Record of Deportable/Inadmissible
19  Alien, (g) 2012 authenticated I-213 form, Record of Deportable/Inadmissible Alien, and (h)
20  Ms. Felix's sworn statement (Id., at 19, 33-35); and (3) Petitioner's Exhibit 10, a document
21  from the Sonoran Office of Vital Statistics, stating that the state of Sonora recognizes
22  Petitioner's Delayed Registration (Id., at 20, 36).

23        In her detailed analysis of the testimony and evidence, the IJ found that the
24  Government had established Petitioner's alienage by "clear, convincing, and unequivocal
25  evidence."   (Doc. 14-3, at 38.)   The IJ then ordered Petitioner subject to removal

---

[3] On September 21, 2013, the immigration judge also issued an order taking "no action" on the bond issue. (Doc. 14-3, at 14.)

- 5 -

1 proceedings. (Id.)  On December 5, 2012, the Government filed a Form I-261, "Additional
2 Charges of Inadmissibility/Deportability," with the immigration court charging Petitioner
3 with three additional basis for removability, based upon Petitioner sustaining a 1998 felony
4 conviction in the Arizona state court for possession of a dangerous drug, a 1998 felony
5 conviction in the Arizona state court for possession of drug paraphernalia, a 1999 felony
6 conviction in the Arizona state court for possession of narcotic drugs for sale, and a 2009
7 felony conviction in the state of Arizona for kidnaping. (Id., at 40.)  Petitioner is currently
8 in custody on no bond. (Doc. 14-3, at 16.)

9 Petitioner appeared in court in continued removal proceedings with new counsel on
10 December 27, 2012. (Doc. 15-1, at 60.)  The matter was continued at counsel's request until
11 January 23, 2013. (Id., at 69.)  On March 14, 2013, Petitioner filed a Motion to Reconsider
12 the IJ's ruling on Petitioner's citizenship claim. (Doc. 14-3, at 43-55.)  In support of the
13 motion, Petitioner submitted a copy of a document from the state of Sonora, Mexico, dated
14 December 13, 2012, that purports to confirm the nullification of Petitioner's Mexican birth
15 certificate on November 12, 2012. (Id., at 53.)  The Government filed a Response in
16 Opposition. (Id., at 58-62.)  On April 30, 2013, the IJ rendered a written decision on
17 Petitioner's Motion to Reconsider, and, construing Petitioner's motion as a motion to reopen,
18 denied relief. (Id., at 73.)  The IJ found that, with the exception of the nullification order, all
19 of Petitioner's proposed new evidence "was available and readily discoverable prior to the
20 Court's determination regarding [Petitioner]'s alienage.
21 ' (Id., at 71.)  The IJ further found that, although the nullification order "could not have been
22 presented prior to November 2012, both of the proposed witnesses (i.e., the attorney and the
23 Mexican government official) were available and could have been called as witnesses prior
24 to the Court's decision.  Indeed, the attorney who litigated the nullification, ... could have
25 offered testimony with respect to his *efforts* to nullify, ...and could have offered testimony
26 regarding the evidence he presented to the Mexican court in favor of nullification."
27 (emphasis in original) (Id., at 71-72.)  The IJ then considered whether or not the introduction
28 of the nullification order would have compelled a different conclusion as to Petitioner's

- 6 -

1  alienage, and found that it would not, noting that "the nullification order was entered more
2  than four decades after [Petitioner] was born, ... and was entered while [Petitioner] was in
3  removal proceedings," and that, "in contrast, [Petitioner]'s Mexican birth certificate was
4  made close in time to [his] birth." (Id., at 72.)

5  On May 10, 2013, Petitioner appeared before the IJ, at which time the IJ sustained the
6  factual allegations on the original charge of Petitioner's inadmissibility pursuant to
7  212(a)(6)(Ai), and the additional factual allegations of inadmissibility contained in the NTA
8  and Form I-261, and ordered Petitioner removed to Mexico. (Doc. 15-1, at 26-30.) Due to
9  his criminal convictions, he is subject to mandatory custody pursuant to 8 U.S.C. §1226(c).
10 On June 4, 2013, Petitioner filed an appeal of the IJ's decision "in merits" proceeding. (Doc.
11 14-3, at 64.) On November 8, 2012, Petitioner filed his habeas petition, claiming as his only
12 grounds for relief, that he is a native and citizen of the United States and continues to be
13 illegally detained. (Doc. 1, at 4.)

14 On October 31, 2013, the Board of Immigration Appeals ordered Petitioner's case
15 remanded for further proceedings, and that Petitioner be given the opportunity to submit
16 additional evidence that is relevant to his claim of United States citizenship, and that the IJ
17 should issue a new decision regarding Petitioner's alienage. (Doc. 19-1, at 3-5.)

**DISCUSSION**

19 In Flores-Torres v. Mukasey, 548 F.3d 708, 711 (9th Cir. 2008), the Ninth Circuit
20 Court of Appeals concluded that the REAL ID Act of 2005, 8 U.S.C. §1252, does not strip
21 the federal district court of jurisdiction when a petitioner does not challenge any final order
22 of removal, but merely challenges his detention prior to the issuance of any such order.
23 Generally, challenges to an alien's detention must be administratively exhausted before filing
24 a habeas claim in the federal district court. Leonardo v. Crawford, 646 F.3d 1157, 1160 (9th
25 Cir. 2011). A nationality claim, such as Petitioner's, need not be exhausted because only an
26 "alien" is required to exhaust administrative remedies pursuant to 8 U.S.C. 1252(d)(1). See,
27 Theagene v. Gonzales, 411 F.3d 1107, 1110 (9th Cir. 2005). "Congress has never enacted a
28 statute that would deprive a citizen of his right to a judicial determination of the legality of

1  his detention simply because his case is pending before an administrative agency." Flores-
2  Torres, 548 F.3d at 712 n. 6; Sandoval-Vela v. Napolitano, 2010 WL 364221, *7 (S.D. Cal.
3  2010) (a non-frivolous claim to derivative citizenship need not be exhausted before it can be
4  considered by the court).

5  Courts may, however, require prudential exhaustion before reaching the merits, if "(1)
6  agency expertise makes agency consideration necessary to generate a proper record and reach
7  a proper decision; (2) relaxation of the requirement would encourage the deliberate bypass
8  of the administrative scheme; and (3) administrative review is likely to allow the agency to
9  correct its own mistakes and to preclude the need for judicial review.'" Puga v. Chertoff, 488
10 F.3d 812, 815 (9th Cir. 2007) (quoting Noriega-Lopez v. Ashcroft, 335 F.3d 874, 881 (9th
11 Cir. 2003)); Sandoval-Vela, 2010 WL 364221 *7 (district court has discretion to reach the
12 merits or require exhaustion).  Exhaustion may be excused if pursuing an administrative
13 remedy would be futile.  Fraley v. United States Bureau of Prisons, 1 F.3d 924, 925 (9th Cir.
14 1993).

15 Considering the above criteria, the Court finds that Petitioner should be required to
16 exhaust his administrative remedies before seeking habeas relief.  First, this case is
17 distinguishable from Flores-Torres in that Petitioner's citizenship claim is intertwined with
18 his removal proceeding and is still before the IJ, who, in presiding over the hearings, heard
19 testimony and considered evidence, and issued a detailed 21-page decision analyzing the law
20 and facts presented.  The IJ also received evidence on Petitioner's Motion to Reconsider, and
21 issued another detailed order analyzing the law and facts.  The case is now back before the
22 same IJ with direction from the BIA to reopen the hearing and hear additional evidence, and
23 create a complete record for review.  This court would be no adequate substitute for the
24 expertise of the administrative agency in reviewing Petitioner's claim to citizenship. Second,
25 relaxing the requirement of administrative exhaustion would encourage the deliberate bypass
26 of the administrative scheme, in that anyone with a citizenship claim could proceed directly
27 to federal court in a habeas corpus proceeding without any administrative review of the
28

claim. Third, the administrative review process is likely to allow the agency to correct its own mistakes, as is evidenced here by the BIA order of remand.

Furthermore, Petitioner has an additional remedy if the BIA were to affirm an IJ denial of citizenship claim and issue an order of removal. Petitioner could then file a petition for review in the Ninth Circuit Court of Appeals, and if that court found issues of material fact about Petitioner's nationality, it "shall transfer the proceeding to the district court of the United States for the judicial district in which the petitioner resides for a new hearing on the nationality claim." 8 U.S.C. §1252(b)(5)(B).

**IT IS THEREFORE RECOMMENDED** that Petitioner's Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 (Doc. 1) be **DENIED**.

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of the district court's judgment. The parties shall have fourteen days from the date of service of a copy of this recommendation within which to file specific written objections with the Court. See 28 U.S.C. § 636(b)(1); Rules 72, 6(a), 6(b), Federal Rules of Civil Procedure. Thereafter, the parties have fourteen days within which to file a response to the objections. Failure timely to file objections to the Magistrate Judge's Report and Recommendation may result in the acceptance of the Report and Recommendation by the district court without further review. See United States v. Reyna-Tapia, 328 F.3d 1114, 1121 (9th Cir. 2003). Failure timely to file objections to any factual determinations of the Magistrate Judge will be considered a waiver of a party's right to appellate review of the findings of fact in an order or judgment entered pursuant to the Magistrate Judge's recommendation. See Rule 72, Federal Rules of Civil Procedure.

DATED this 21st day of November, 2013.

_Michelle H. Burns_
Michelle H. Burns
United States Magistrate Judge